Chancellor Johnston
At this term, delivered the following opinion :
The majority of the Court is satisfied with so much of the circuit decree as concludes from the evidence, that James B. Pickett assisted Reuben Pickett to carry his personal property beyond the operation of the plaintiff’s lien, for the purpose of defeating it and obtaining a preference on it; and entertain no doubt that this conduct was a fraud against which the plaintiff is entitled to relief.
There is another point, however, of some difficulty. The answer of James B. Pickett charges that the plaintiff’s judgment is founded on a *362 usurious contract; and (without offering to pay the principal and interest actually due) insists that the usury deprives the plaintiff of all right to the relief he seeks.
This point has occasioned much hesitation here. My firm conviction, after mature reflection, is that the objection is flagrantly against principle, and but indifferently supported by authority: and I shall now proceed to give the grounds of this opinion.
In 1 Fonblanque, 25, the general principle is laid down, that if one come into equity to have an instrument given on an usurious consideration cancelled, he will be relieved only on terms of his paying what is bona fide due; and if his bill does not contain an offer to do this, a demurrer will lie to it. But if the party claiming under such instrument comes into equity to set it up, the Court will resort to the letter of the statute, which condemns this contract.
In Fitzroy v. Gwillim, 1 T. R. 153, the plaintiff had pawned goods on an usurious contract; and without paying principal and lawful interest, brought trover for the goods. Per Lord Mansfield, *Ch. J. “A 4 4-* lender upon an usurious contract is precluded from recovering any thing on that contract; but if the borrower seeks relief, he must first do what is right between the parties. Here the plaintiff did not tender what had been actually advanced. ”
Mason v. Gardiner, 4 Br. Ch. Rep. 436, was a bill to have a bond infected with usury delivered up. A demurrer was sustained because the borrower made no tender of the real debt.
Rogers v. Rathbun, 1 John. Ch. Rep. 361, was a bill to enjoin a suit then pending, on the ground that the suit was on an usurious contract. The injunction was denied because the bill did not offer to pay the sum actually due.
In Scott v. Nesbit, 2 Br. Ch. Rep. 641, (S. C. 2 Cox Ch. Rep. 183,) the bill was by Mrs. Scott, against the executors of her debtor for an account of assets, and another creditor came before the master and proved a judgment debt, which the plaintiff objected to on the score of usury. The objection was overruled because the judgment was not examinable, (2 Cox 184) ; the Lord Chancellor ^Thurlow) at the same time observing, that if this were not so, still the plaintiff was not entitled to object, inasmuch as she had not offered to pay the sum really due on the usurious contract. I shall have occasion to recur to this case.
These authorities sufficiently support the doctrine laid down by Fonblanque. They establish this, and no more — that while the contract remains in pais, not having passed into judgment, it is examinable. That if suit is brought to obtain a judgment on it, or, as Ch. J. Kent expresses it, in Jackson v. King, 10 John. Rep. 195, if the suit is upon the very instrument itself, no recovery can be had. That if, on the other hand, relief is sought against it, this will be granted only on equitable terms. If the lender is the actor, he will be turned out of Court: if the borrower is the actor, he also will be turned out, unless he will do equity.
But no case can be found, it is believed, where the borrower has been relieved, or the lender ejected from the forum, when judgment has been obtained on the contract, except when the proceeding is in bankruptcy, or when the judgment has been obtained by fraud, or, perhaps, when the judgment was a constituent part of the usurious agreement itself.
*363 In bankruptcy the rule is peculiar. No part of the debt is allowed, whatever be the form of the security. That never was the rule in equity. 9 Ves. 84.
*When the judgment has been obtained by fraud, it will be r*.*set aside, on account of the fraud, not on account of the usury. *- . — Thompson v. Berry and Van Buren, 3 John. Ch. Rep. 395, is very much to the point. That was a bill by the borrower to be relieved of the usuaiy contained in two judgments; one held by each of the defendants. There was no doubt of the usury in both instances. Van Buren’s judgment was allowed to stand as a conclusive protection of the contract behind it, because obtained fairly; but that of Berry was set aside because obtained by fraud; and the contract itself was thus exposed to examination.
On what principle was Van Buren’s judgment allowed to stand but this — that all objections to the contract were closed by the judgment, and that the usury was res judicata ?
On what principle was Berry’s judgment denied to be decisive on the usury, as res judicata, but that the borrower had been shut out of his defence by fraud ?
With respect to judgments taken as part of the usurious agreement itself, it might be conceded that they cannot stand : but this concession would not affect the position I have taken. Such judgments might be viewed as mere stipulations inserted in the usurious contract, to waive the benefit of the law. This is the light in which a case might be viewed, when, contemporaneously with the usurious agreement and as part of it, a warrant of attorney was given by the borrower to enter up a judgment; or when the loan was made on a confession of judgment for the usury.
That a judgment fairly obtained upon a usurious contract is conclusive, has been ¡repeatedly held in this State. As, for instance, in Fowler v. Stewart, where the suit was on a judgment which had been rendered on usurious notes. The defendant was not allowed to go behind the judgment and examine the contract on which it was founded. Numberless cases of a similar character have occurred where a like decision was made. See also 1 Murphy, 225, Branton v. Dixon.
The case I have referred to, show that when relief has been refused to the lender, or granted to the borrower, the usurious contract had never passed into judgment, except in bankruptcy ; or when the judgment was unfairly obtained, or was itself the usurious security.
To allow the borrower to neglect his defence at law, and then make his omission the ground of application of this Court, would *be p* no better than a permission for laches. It would give him choice *- of jurisdictions — authorize him to fold his arms when the law gave him ample remedy, and when the death of witnesses or other accident had deprived his creditor of power to 'disprove his allegation of usury, come into this Court and obtain an advantage, to which, perhaps, by the real facts of the case he is not entitled. But such neglect is not favored in this Court; the settled doctrine of which is truly stated by Lord Eldon, in Ware v. Norwood, 14 Ves. 31, to be, “that the omission to take advantage of the usury, at law, is no ground for relief in Equity.” If the borrower, when sued upon the judgment rendered on the usurious con *364 tract, may raise the objection which he neglected when the judgment was obtained, what is this but to give him two opportunities to try the same question ? Maxwell v. Connor, 1 Hill’s Ch. Rep. 14. What would this be, but to prostrate the whole doctrine of res judicata, and open the way to endless litigation ?
One of James B. Pickett’s judgments against Reuben Pickett, is junior to that of the plaintiff.
It is not doubted by any one that the plaintiff’s judgment is conclusive on Reuben Pickett. The true question, then, is, whether Reuben Pickett’s junior creditor can take an advantage to which it is conceded Reuben himself is not entitled. I think the junior creditor has no better right , than his debtor, and that whatever binds the latter, binds the former, unless when the former is defrauded.
Was it ever heard of, that a creditor who had proved his demand and obtained judgment on it against his debtor, was obliged to prove it over again when the contest was between himself and another creditor ? Unless obtained by fraud and collusion between him and the debtor, it is conclusive on all others.
If instead of James B. Pickett’s fraudulently obtaining possession of the avails of Reuben’s property, the sheriff had sold that property and the avails were now in his hands, can any man be found to contend for a proposition so absurd, as that James B. could question the plaintiff’s right to draw from the sheriff the amount of his judgment ? And shall this defendant keep money to which he is not entitled, merely because he has got it by unfair means ? Shall he be permitted to change the unquestionable rights of the parties, by fraud ? and because that fraud renders it necessary to the plaintiff to come here to restore things to that x*posture in which the law had placed them, take advantage of his own wrong ?
It is a great misconception to suppose the plaintiff came here to set up the usurious contract. He had already recovered on that, and obtained a lien on his debtor’s property. The law gave him that lien. He has been deprived of it by fraud ; and he comes here to undo that fraud. That is his only purpose : he asks no more.
He does not come here to sue on his contract; but to insist on his judgment lien. The contract lies behind the judgment, and can never be assailed until the judgment has been set aside.
It has been argued that Scott v. Nesbitt, 2 Bro. Ch. Rep. 641, one of the cases I have mentioned, authorizes James B. to assail the plaintiff’s judgment.
That case, is reported twice, (2 Cox’s Ch. Rep. 183.) The case is stated, and the argument and the summary of the Chancellor’s judgment given by Brown. The judgment of the Chancellor is more fully reported by Cox.
The case is briefly this : Mrs. Scott brought her bill to have an account of assets from the defendants, who were the executors of her debtor. The case was referred, with leave to other creditors to prove their demands before the master. Among the demands presented, was a judgment obtained by the executors of the Countess of Macclesfield against the defendants, on an usurious bond given by their testator. Mrs. Scott objected to this judgment for usury, and the master rejected *365 it. On appeal to the Lord Chancellor, (Thurlow,) he allowed the judgment to stand, and that for the full amount. The objection to the judgment was, that there was no judgment in the life of the testator— that at his death the matter rested in contract infected with usury, and that a judgment, obtained against the obligor’s executors, gave no preference over fair creditors. That the latter were at liberty to take things as they stood at the debtor’s death, and insist on the usury. Lord Thurlow’s judgment on this point was, that “This judgment, if ■ fairly obtained before the decree here, gained a priority, as if gained in the testator's life time.''
What was this but to concede, in the fullest terms, that if the testator had been alive, the judgment would have bound both him and the junior creditor ?
The master’s decision was reversed, and the judgment stood for the full amount.
*It is true, the Lord Chancellor did say, that, “ at any rate”— that is, whether the junior creditor was bound by the judgment or <-' not, she could not object to the usury, inasmuch as she had not offered to pay what was really due. But this was evidently by way of offering an additional reason for his judgment.
That my construction of this case is not singular or unfounded, appears by what Lord Eldon says of it, in Ware v. Horwood, 14 Ves. 31. He states his understanding thus : “ In Scott v. Nesbit, the master having-disallowed a debt on the ground of usury, Lord Thurlow allowed the debt to stand.” Eor what reason ? Not because the junior creditor had not tendered principal and interest, but — “ holding that the omission to take advantage of the usury at law, was no ground for relief in JEquity. ”
Chancellor Kent quotes the case in French v. Shotwell, 5 John. Ch. Rep. 565, with the same understanding of it.
Having mentioned the very instructive case of French v. Shotwell, I must say, that in my judgement, bne more conclusive on every position I have taken, cannot be required. The plaintiff's, who were purchasers of lands bound by a judgment founded on usurious bonds, filed their bill to have the lands exonerated from the judgment. Chancellor Kent, after showing that Ten Broeck, the vendor of the land, was concluded by the judgment, goes on to show by the clearest reasoning, that subsequent purchasers under him, with notice of the judgment (not of the usury,) could not impeach the judgment, or assume a remedy which he had neglected. He insists¡that the entering up of the judgment was notice of the lien to all subsequent purchasers : and observes, that “ He who confesses a judgment, or suffers it to pass by default, is concluded from defence, according to the general language of the cases. And if the party himself, who is the victim of the fraud, or usury, chooses to waive his remedy and release the other party, it does not belong to a subsequent purchaser under him, to recall and assume the remedy under him. If a judgment was fraudulent by collusion between the parties to it on purpose to defraud a subsequent purchaser, the case would present a very distinct question. But if the judgment was fraudulent only as between the parties, it is for the injured party alone to apply the remedy. If he chooses to waive it and discharge the other party, it cannot consist in *366 justice, or sound policy, that a subsequent voluntary purchaser, knowing of that judgment, should *be competent to investigate the merits of the original transaction as between the original parties.”
What can be more conclusive than this view ? It shows clearly, I think, that persons claiming through a debtor, cannot object to a senior claim on that debtor, unless defrauded by it; that such persons cannot object to usury as usury, but as fraud. That when they purchase from or credit the borrower, with notice of his prior obligations, they are bound by them, because not defrauded by them.
In Moffet v. Cochran, 1 M’C. Ch. Rep. 441, the same view was taken by my brother Johnson in delivering the opinion of the Court. In this case, by the way, the usurious instruments objected to by the other creditors had not passed into judgment.
A similar view was taken in Smith v. Fisher, 2 De Saussure’s Rep. 215. A junior creditor filed his bill against a senior creditor, whose demand had not passed into judgment, for a discovery whether the senior demand was not usurious, and to be relieved against it. The Court sustained a demurrer on the ground that the bill charged usury only, and not fraud. Is not this case completely decisive of the one before the Court ?
It seems to be somehow conceived, that the allowing the plaintiff’s lien a preference over James B. Pickett’s, would defraud the latter, merely becauseii would diminish the fund out of which he is to be paid.
If loss occasioned in this way constitutes a fraud on a junior creditor, how could the decisions in Smith v. Fisher, and Moffet v. Cochran, have been made ? They appear to conclude the very point.
If the sheriff had sold the debtor’s property, and held the avails, the plaintiff could have drawn the amount of his debt. It will not be contended that that would have defrauded James B. Pickett. But would not his loss have been as great in that case as in this ?
My opinion is, that the Circuit decree should be affirmed throughout; and the majority of the Court concurring in this opinion, it is ordered that the motion be dismissed. '
Chancellor De Saussure, and Justices Richardson, Evans and Butler, concurred.
Johnson, Chancellor.
I am not satisfied that the defendant ought to *4801 c'larSe(i on account of any aid he might have given *to Reuben -* Pickett, in removing out of the State; but on the question as to the right of the defendant to open and examine the judgment obtained by plaintiff against Reuben Pickett, on account of usury in the contract on which the judgment is founded, I concur entirely in the opinion delivered by my brother Johnston.
Harper, Chancellor.
We concur very fully with the Chancellor on all the points which he has considered and decided. The sale of the land was such a transaction as can never be permitted to stand in this Court. He has directed the proceeds of the slaves sold at Lancaster to be paid over to the executions according to their legal priorities, according to the long and well-established rule in this State. We perceive no reason to dissent from his conclusion on the testimony that the defendant, James B. Pickett, did combine with Reuben Pickett, and assist him in elandes *367 tinely and fraudulently removing Ms property out of the State, for the purpose of eluding the plaintiff’s execution. The obvious consequence on equitable principles is, that he cannot be permitted to retain au advantage which he has gained by means of that fraud.
But there is another point which seems not to have been brought to the view of the Chancellor, and therefore not considered or decided by him. It is, however, made in the cause, and argued as an appeal to us, and it is therefore necessary tha,t we should consider it. It appears from the testimony of two of the witnesses, (and I know of no reason why they should not be credited,) that the contract on which the judgment of plaintiff was confessed was usurious. It is therefore necessary to inquire whether he is entitled to the aid of the Court in enforcing the judgment obtained on such contract.
I believe, on the preponderance of authority, the rule of equity to be as stated, 1 Fonb. 25, n.: that a party coming into equity to be relieved from an usurious contract, must do equity by offering to pay what is really due, or the Court will not. interfere in his behelf; but, if a party comes to enforce a usurious contract, the Court will act on the letter of the statute — that is to say, it will regard the contract as void, and dismiss his bill. It is said, lb. 39, 40, that if a fraudulent person come into Court, he shall not have what was bona fide lent. So it was said by Lord Mansfield, professing to consider the subject on equitable principles : *“ A lender upon an usurious contract, is precluded from recover- p* ,g, ing any thing upon such a contract. But if the borrower seek L relief, he must first do what is equitable between the parties.” — Fitzroy v. Gwillim, 1 T. R. 154.
In Mason v. Gardiner, 4 Br. C. R. 436, a demurrer was sustained to a bill brought to have an usurious bond delivered up for want of an offer to pay what was due. It appears from the argument that it was a cross bill, and it was admitted that the original bill brought to enforce the contract must be dismissed. In Benfield v. Solomons, 9 Ves. 84, it was said by Lord Eldon, that the plaintiff to a bill cannot have relief on- an usurious contract without an offer to pay; but that an usurious creditor coming in bankruptcy, shall have nothing. But as to this point I am not aware that there is any serious doubt.
A question of more difficulty is, whether, as the plaintiff has obtained a judgment at law, either the defendant himself, or his other creditors, can enter into the consideration of the judgment. It is admitted, upon a well-known equitable principle, that if a judgment had been obtained in due course of law, in which the party had an opportunity of defending himself on the ground of usury, and he had omitted to do so, it would have been too late for him to come into equity for relief. The defendant himself, and all privies, would have been concluded by the verdict. But in this case the judgment was by confession. In Thompson v. Berry and Van Buren, 3 John. C. R. 395, Chancellor Kent relieved against an usurious judgment entered upon a warrant of attorney to confess judgment, though he refused to relieve against one obtained in 'due course of law. This may have been, though not directly stated, on the ground that the warrant of attorney to confess was part of the original usurious transaction. It does not appear in this case, so far as I can see, whether the usurious note on which the judgment was confessed, was exe *368 cuted with a view to be secured by the confession. It was an old debt, and the note had been several times renewed. But whether the last usurious renewal, when a new party was added to it, was made with a view to the confesson, does not distinctly appear.
The case of Scott v. Nesbit, 2 Cr. C. R. 641, was one in which an usurious judgment was impugned by the creditors of the defendant. The case is not very perspicuously reported, but appears to be this : A bill had *4821 been filed on behalf of creditors *generally, for an account of an insolvent estate and payment, and a reference to the Master had been ordered, to take the account. The plaintiff’s bill was to have an account and to obtain payment of a judgment which had been recovered on an usurious bond. This was referred to the same Master ; in fact it was included in the former order. It was argued that the judgment must bind until it was got rid of at law. The Master disallowed the whole judgment. On the cause coming before Lord Thurlow, he thought the general creditors could do before the Master, only what they could do on a bill filed by them against the judgment creditors. They could only displace the judgment by doing what was just — that is, of course, by paying what was really due. The case certainly is authority that the creditors of an insolvent may go into the consideration of an usurious judgment against him. Regarding it as the creditor’s bill, he held them bound to offer what was just; leaving us to infer that it would have been different if it had been merely a bill by the usurious judgment creditor, and that in that case the demand would have been disallowed altogether. Indeed, if the creditors were not concluded by the judgment, such is the well established general rule on the authorities before referred to. I find the note of a ease of which I have not the original report, in Hammond’s Digest, 648, tit. Usury. There was a judgment on a warran't-of-attorney to confess. An issue was directed to try the fact of usury. The assignees of the bankrupt defendant had agreed that the plaintiff might prove his debt under the commission. But the Court held this to mean a provable debt, and not one infected with usury. It is true that in bankruptcy, judgment creditors, as to the receiving of dividends, are on the footing of other creditors. But the case shows that they are not bound by an usurious judgment against the bankrupt debtor.
The ease of French v. Shotwell, 5 John. Ch. Rep. 565, has been supposed somewhat at variance with these views. But I do not perceive the application of that case. There, land was purchased which was bound by an usurious judgment which had boon obtained against the vendor. The purchaser filed a bill to set aside the judgment. Chancellor Kent decided that he was a privy in estate with the vendor, and therefore bound by the judgment. He could take the land no otherwise than subject to every liability to which it was subject in the hands of the vendor. The vendor, too, had before filed a bill to be relieved against the judgment, *4881 *anc^ byacompromise, obtained fairly and without fraud, his bill -* bad been dismissed. He therefore was certainly concluded.
Certainly creditors are not privies, in any sense in which the words have been used. Is there any question but that the creditors of an insolvent may impeach any judgment obtained against him by fraud and collusion ? Is there any question but that they may sot aside a voluntary judgment confessed by such debtor ? This is exactly on the same principle *369 that they may set aside a voluntary conveyance; and even subsequent creditors may do this, if the party were indebted at the time, which I suppose can hardly be doubted with respect to the debtor in this case. A judgment confessed on a contract declared bylaw to be absolutely void, is in effect a voluntary judgment. The law imputes blame to both the parties to an usurious contract, and such confession may well be regarded as being always made by collusion to the prejudice of creditors.
The present plaintiff comes to enforce an usurious judgment. It is immaterial what may be the fraud of the defendant; on the principles laid down, it should seem that equity would interfere in favor of neither.
Justices Gantt and O’Neald concurred in this opinion.
O’Neald, J.
I am also against the Circuit decree, on the ground that there was no fraud in sending the negroes out of the State.